IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:13CV254 |
| | ) | |
| v. | ) | |
| | ) | |
| $9,230.00 IN UNITED STATES CURRENCY, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

This matter is before the Court following a bench trial held on August 26, 2014. The plaintiff United States of America brought this action for forfeiture of $9,230 in United States Currency ("currency") (Filing No. 1). Claimant Timothy Hickman-Smith filed an answer asserting that the United States cannot demonstrate that the currency was the product of any criminal activity (Filing No. 12). For the reasons set forth below, the Court finds that the government has failed to meet its burden under the preponderance standard to show a substantial connection between the defendant property and a controlled substance offense.

**BACKGROUND**

On March 13, 2013, at approximately 6:54 p.m., Omaha Police Officers Jeffrey Wasmund ("Wasmund") and Jeff Shelbourn ("Shelbourn") conducted a traffic stop of Timothy Hickman-Smith

("Hickman-Smith") for changing lanes without signaling his intent to change lanes within 100 feet. Hickman-Smith was driving a black Volkswagen Jetta rental car from Hertz with Minnesota plates. No police video or audio was recorded during the traffic stop.

Officer Wasmund approached the driver's side of the vehicle and Officer Shelbourn approached the passenger side. Officer Wasmund and Officer Shelbourn both testified that upon approaching the vehicle they smelled a strong odor of marijuana. Officer Wasmund instructed Hickman-Smith to step out of the vehicle. The record is unclear about whether or not Hickman-Smith was placed in handcuffs. Officer Wasmund testified that he placed Hickman-Smith in the police cruiser and began asking questions. When asked about the odor of marijuana, Hickman-Smith responded that there was no marijuana in the vehicle. The officers then conducted a search of Hickman-Smith's person and the vehicle.

During the search of Hickman-Smith's person, Officer Wasmund located two folded bundles of United States currency in Hickman-Smith's left front pocket. One bundle contained $670 and the other contained $560. The search of the vehicle produced an additional $8,000 located in the front armrest storage compartment. The currency was taped in plastic wrapping and

folded into eight separate bundles containing $1,000 each.  The denominations of the currency included multiple $20, $50, and $100 bills.  The officers testified that the plastic bag containing the $8,000 smelled of marijuana.  The officers also recovered two cell phones from the front seat, a box of one gallon size freezer bags and one box of plastic sandwich bags located in the trunk, and multiple rubber bands on the vehicle's turn signal lever.  However, the search did not result in finding any marijuana in the vehicle.

When Hickman-Smith was asked about the currency, he stated that he recently sold a 1978 Chevrolet Monte Carlo for $8,000.  Hickman-Smith informed the officers that he sold the vehicle to an African-American female named "Sydney" and an African-American male named "Vermont" but that he did not have their contact information.  He also stated that the money on his person was his own personal money.  When asked about the cell phones, Hickman-Smith stated that the black Samsung phone belonged to his girlfriend, and the white Iphone was his personal phone.  The officers seized the $9,230 based on the nature of the traffic stop, the odor of marijuana, the large amount of currency, and the way the currency was packaged.  Hickman-Smith was released without a traffic citation and left the scene on foot.

**LEGAL ANALYSIS**

**1. Motion to Suppress**

This case involved a joint hearing on claimant's motion to suppress (Filing No. 16). The claimant argues that the search of his vehicle was without any legal justification and in violation of his constitutional rights. The government contends that the search and seizure were lawful.

In a civil forfeiture action, the Fourth Amendment's exclusionary rule applies. *See U.S. v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 646 (8th Cir. 1999). The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014)(quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576(1967)). The automobile exception permits the warrantless search of a vehicle if police "had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." *Vore,* 743 F.3d at 1179 (quoting *United States v.*

-4-

*Wells*, 347 F.3d 280, 287 (8th Cir. 2003)).  In addition, the Eighth Circuit has held that the odor of marijuana detected in a vehicle during a traffic stop gives the officers probable cause to search the vehicle.  *See United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000).

In this case, the Court finds that the officers had probable cause to both stop and search the vehicle.  The officers stopped Hickman-Smith's vehicle due to a traffic violation, an improper lane change.  The officers testified that as they approached the vehicle, they detected a strong odor of marijuana.  As a result, the officers had probable cause to search the car for contraband or other evidence of a crime related to the odor of marijuana under the automobile exception.  The search of Hickman-Smith's person and vehicle was lawful.  Claimant's motion to suppress will be denied.

**2. Forfeiture**

The United States claims that the currency is subject to forfeiture under 21 U.S.C. § 881(a)(6), which states,

> All monies . . . furnished or
> intended to be furnished by any
> person in exchange for controlled
> substance . . . all proceeds
> traceable to such an exchange, and
> all monies . . . used or intended
> to be used to facilitate any
> violation of [controlled substances

     used in violation of Title 21]. 21
     U.S.C. § 881(a)(6).

The burden is on the government to establish, by a preponderance of the evidence, that seized property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Forfeiture is permitted under 21 U.S.C. § 881 when the government establishes a "substantial connection between the property" and a controlled substance offense. 18 U.S.C. § 983(c)(3). Circumstantial evidence can establish that burden of proof. *United States v. $84,615 in U.S. Currency*, 379 F.3d 469, 501 (8th Cir. 2004).

  The Eighth Circuit has "adopted the common-sense view that bundling and concealment of large amounts of currency, combined with other suspicious circumstances, supports a connection between money and drug trafficking." *United States v. 124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006). The Circuit has found suspicious circumstances to include currency wrapped in rubber bands, concealment of the money, strange travel patterns, a canine alert, and possession of illegal drugs at the time the currency in discovered. *See, e.g., United States v. $12,390 in U.S. Currency,* 956 F.2d 801 (8th Cir. 1992) (noting that currency wrapped in rubber bands is a characteristic of the way drug money is stored); *United States v. $117,920 in U.S. Currency*, 413 F.3d 826 (8th Cir. 2005)(money found in the trunk

-6-

of a car, enclosed within a plastic sack, and hidden under clothes in a duffle bag); *U.S. v. $124,700 in U.S. Currency*, 458 F.3d 822 (8th Cir. 2006) (the claimant purchased a one-way ticket to Chicago to purchase a truck that was later sold to another and elected to drive back in a rental car not registered in his name); *U.S. v. $84,615 in U.S. Currency*, 379 F.3d 496, 502 (8th Cir. 2004) (concluding that a dogs alert to currency provides "some-albeit slight-indication" that money is connected to drug trafficking and that possession of illegal drugs is also consistent with drug trafficking).  However, the Circuit has also previously noted that "an innocent traveler might theoretically carry more than $100,000 in cash across country and seek to conceal funds from would-be thieves on the highway."  *$124,700*, 458 F.3d at 826.

In this case, the government alleges that the currency recovered from Hickman-Smith's person and the rental car was used to commit or facilitate the commission of a criminal offense.  At trial, the government only presented circumstantial evidence to establish a connection between the currency and any criminal offense.  The government relied on the amount of currency seized, the packaging of the currency, the concealment of the currency, the presence of rubber bands, plastic bags, two cell phones, and

the officers' report that the vehicle and the bag containing the currency strongly smelled of marijuana.

Possessing large amounts of currency may be evidence of connecting the currency to illegal drug activities. *See U.S. v. Thirty-Nine Thousand Eight Hundred Seventy-Three and No/100 Dollars ($39,873)*, 80 F.3d 317, 319 (8th Cir. 1996). However, this case involves $9,230, which is substantially less than other forfeiture cases that found for the government. *See e.g., United States v. 124,700 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006); *United States v. $117,920 in U.S. Currency*, 413 F.3d 826 (8th Cir. 2005); *U.S. v. $84,615 in U.S. Currency*, 379 F.3d 496, 502 (8th Cir. 2004).

Officer Wasmund testified that, based on his training and experience, the packaging and concealment of the $8,000 was indicative of narcotic activity. However, the officer's testimony is not dispositive. The Eighth Circuit has stated that, "If one were to travel with a large sum in currency, common sense would support having a method of keeping it organized while carrying and concealing it from would-be thieves." *$48,100 in U.S. Currency,* 756 F.3d at 654. Hickman-Smith claims that the currency was derived from legitimate sources. Evidence was offered at trial that Hickman-Smith did own a 1978 Chevrolet Monte Carlo. In addition, Hickman-Smith's girlfriend testified

-8-

that he sold a Monte Carlo and that she had also loaned him $4,500 around the time of the traffic stop.

Moreover, the presence of rubber bands, plastics bags, and multiple cell phones is suspicious, but not dispositive. The currency found in Hickman-Smith's vehicle was not wrapped in rubber bands, but rather rubber bands were found on the turn signal lever. Hickman-Smith's girlfriend testified that the rubber bands were hers from her employment at Convergys. Both Officer Wasmund and Officer Shelbourn testified that the black Samsung cell phone seized from Hickman-Smith's rental vehicle did not produce any incriminating evidence. The white Iphone was passcode protected and could not be searched.

During the search the officers reported a strong odor of marijuana coming from the vehicle and the bag containing the $8,000 in currency. However, no marijuana was ever found in the vehicle or on Hickman-Smith's person. Both officers testified that a drug dog was called to the scene but was not deployed on the car or the bag containing the currency. Officer Wasmund stated that they were informed that a drug dog cannot be deployed after a search because it would "taint" the search.

The government's case falls short in proving that more likely than not that the currency was connected to a controlled substance offense. Even though the officers testified that they

-9-

smelled an strong odor of fresh marijuana, no marijuana was found in the vehicle.  Evidence was presented at trial that the currency was derived from a legitimate source:  the sale of the Chevrolet Monte Carlo.  The government's case relies more on mere speculation rather than circumstantial evidence.

Considering the evidence in the totality, the Court concludes that the government has failed to meet its burden.  The circumstantial evidence does not demonstrate a substantial connection between the defendant property and a controlled substance offense.  Accordingly, a separate order will be entered in accordance with this memorandum opinion.

DATED this 1st day of October, 2014.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court